[L. A. No. 16559.   In Bank.—April 15, 1938.]

SAMUEL S. GELBERG, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Jerry Giesler and S. Ward Sullivan for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of The State Bar that petitioner, Samuel S. Gelberg, be suspended from the practice of the law for a period of one year.   The board of governors by a unanimous vote adopted the findings of fact made by the local committee which heard the charges against petitioner, but by a divided vote rejected the recommendation of the local committee that he be given only a public reprimand.   The petitioner prays this court to adopt the recommendation of the local committee.   He does not deny

that he was guilty of negligence in the conduct of his practice, as found by the committee.

█ The local committee found that petitioner had been "guilty of negligence in overlooking and overseeing his office, permitting a system of nonproperty owning employees to sign bonds of various kinds as an incident of and as a part of their employment without any recognition or knowledge on their part of what they were doing and without any expectation on their part to be bound". The committee further found that investigation by the respondent of the course of conduct in his office would quickly have disclosed this practice, and proper supervision would have prevented it. In support of his plea that a public reprimand is the appropriate penalty, petitioner points to the fact that the local committee did not find that he had actual knowledge that his employees who were signing bonds did not own property.

The order to show cause listed ten bonds filed in eight different actions in which petitioner was the attorney of record. These bonds were filed between September 30, 1935, and September 8, 1936. Eight of the bonds were attachment bonds. The remaining two were filed pursuant to section 689 of the Code of Civil Procedure, which provides that property upon which execution has been levied shall be released where a third party claim is asserted unless an undertaking is filed. The bonds were respectively in the following amounts: $50, $216, $261, $301.24, $320, $500, $825, $1,000, $5,000 and $30,000. All except the bonds for $5,000 and $30,000 were filed in the Municipal Court of Los Angeles. The bond for $30,000, filed in the superior court, was inadvertently drawn in that amount, instead of for $3,000.

Petitioner had a large practice in the collection of accounts for clients. The actions in which the bonds were filed were all brought in the name of M. Moser, an employee of petitioner, as assignee for collection. The employees of petitioner who signed bonds were Dora Wallin, Eleanor Morales, Jerry Greenfield and Marie Moser. In two instances Marie Moser signed attachment undertakings both as principal and surety. These several employees were all young women who did clerical work in petitioner's office at salaries of between $45 and $60 a month. Eleanor Morales was a minor and under the age of eighteen years when she signed bonds as a surety.

Petitioner cannot contend that he was not aware of the practice of having employees in his office sign bonds, since he himself testified that this practice was inaugurated in 1927 when he employed an attorney to organize his law office. Petitioner was admitted to practice in New York in 1916. He was admitted in this state in 1925. As his practice grew in this state, he felt the need of assistance of a person who was familiar with the organization of large law offices, and hence acquired the services of an attorney who, according to petitioner, started the practice of having employees sign as sureties on bonds in municipal court actions. He testified that said attorney told him such practice was usual in this state. The extent to which petitioner may claim ignorance of the practice in his office in regard to bonds is that he did not know that employees who were signing as sureties did not own sufficient property to qualify them.

Petitioner testified that the portion of his legal business which involved the collection of accounts, and which he described as the commercial or collection department, was not under his personal supervision. Except for the period between February and October, 1936, he employed one or two attorneys. His wife and a Mrs. Baker, who were not attorneys, also worked in a supervisory capacity in said department. Petitioner had a large bankruptcy practice to which he devoted his personal attention. However, five of the ten bonds referred to in the order to show cause were filed during the period when no other attorney was connected with petitioner's office, and when, according to petitioner's testimony, he had "very little" general practice by reason of economic conditions.

The young girls who signed the bonds testified that no inquiry had ever been made of them as to whether they owned property. They signed the bonds and the affidavits to the effect that they were worth the penal sum of the bond over and above all just debts and liabilities, exclusive of property exempt from execution, without realizing fully the nature of the instruments they signed. Eleanor Morales customarily made up the bonds by filling in blank spaces on forms, and brought them to the other girls to sign as sureties. This practice of Miss Morales had developed as a result of instructions given her by persons in a supervisory position in the office. Miss Morales then took the bonds to Mrs. Baker, who

as a notary signed the *jurat* to the affidavit of the sureties. All the young women who acted as sureties testified that petitioner had never asked them to sign a bond, nor discussed the matter with them.

In October, 1936, a complaint was made to The State Bar by one Rushton. Mr. Rushton was the third party claimant to property upon which execution had been levied to satisfy a municipal court judgment for $300 rendered in favor of M. Moser against one Stadden. To prevent the release of this property to the third party claimant, the judgment creditor filed an undertaking in the sum of $50, upon which E. Morales and D. Wallin were sureties. Rushton excepted to the sufficiency of the sureties. The judge of the municipal court in which the action was tried testified upon the hearing before the local committee, and said committee found, that he justified the sureties upon the assumption that petitioner, as their employer, would be responsible upon said bond in case of any claim thereon.

Thereafter it was determined that Rushton had title to the property and an order was made for its return to him. On July 28, 1936, Rushton secured a judgment in the small claims court against Moser, Morales and Wallin in the sum of $50, as damages sustained by him by reason of the taking of his property. After a failure to pay the judgment on Rushton's demand, he called at the office of The State Bar in October, 1936. On November 12, 1936, petitioner was advised by The State Bar that complaint had been made against him. During the month of December petitioner was authorized by his client on whose behalf the action had been brought in the name of Moser to pay the small claims' court judgment from funds of the client which petitioner had on hand. He did not pay Rushton this amount until February 2, 1937, almost a month after the preliminary hearing and after the local committee had issued an order to show cause. Rushton testified that Miss Wallin offered on the telephone to settle his claim for $10.

Petitioner admits his culpability in permitting his law office to be conducted in such a manner that his employees who did not own property were regularly acting as sureties on bonds. In explaining his lack of closer supervision he points to his large practice and the fact, as testified by him, that he devoted himself largely to other phases of his legal

practice. However, five of the ten bonds were filed during the period when no other attorney was connected with petitioner's office, and when, according to his own testimony, he had very little general practice.

The proceedings in connection with Rushton's third party claim must have forcibly drawn to petitioner's attention the fact that young women in his office, who were receiving salaries of not more than $60 a month, were signing bonds as sureties. Petitioner's explanation of this matter is that he told the judge that he owed the girls more than the amount of the bond ($50) at that time. He was concerned only with $50, and the thought of their being worth in excess of $50 did not come into his mind.

Miss Esty, the attorney representing Rushton, testified that she asked petitioner for a list of the properties upon which Miss Morales and Miss Wallin had justified as sureties. One of said sureties opened her purse and took out a check for $50. Miss Esty testified that petitioner waved this check in her face and asked her if that didn't look as if the surety had sufficient property to pay a $50 judgment. Petitioner also made the following statement before the local committee: "I talked to other people in the office about the general worth of my employees and received the information that they were worth . . . that they were saving their money and were worth money." Mrs. Gelberg testified that it was her belief when the bonds were signed, and she still continued in the belief, that any one of the girls was worth $500 by reason of being permanently employed.

It also appears that in October, 1935, exception had been taken to the sureties on a bond filed in another case to prevent release of property upon a third party claim. Petitioner testified that he discussed the matter with the attorney on the other side in said case, and that the third party claim was withdrawn pursuant to stipulation.

On September 25, 1936, Miss Morales and Miss Wallin were examined as to the property owned by them in a supplementary proceeding initiated by Rushton after the entry of the judgment against them in the small claims court for $50. Petitioner has devoted several pages in his brief to the proposition that he first had knowledge on September 25, 1936, that employees in his office who were not able to justify as sureties were signing bonds.

We are of the view that petitioner cannot in good faith claim that his ignorance of the financial irresponsibility of his employees to act as sureties continued to that late date. Any inquiry at all of said employees when Rushton excepted to their sufficiency as sureties would have revealed their disqualification, and this in turn should have served notice on petitioner as to the dangerous practices in vogue in his office in regard to bonds.    Instead, three more bonds were filed in the amounts of $825, $216 and $30,000, with nonproperty owning employees as sureties.    In view of the Rushton proceedings, petitioner's neglect is of such character as to constitute a wanton indifference to existing material facts which would have been revealed by the slightest effort on his part.

After Rushton had secured the judgment in the sum of $50 against petitioner's employees on July 28, 1936, on account of the wrongful taking of Rushton's property, petitioner did not pay said judgment.    Indeed, one of the surety-employees made an effort to settle Rushton's claim by the payment of ten dollars.    In December, 1936, petitioner was authorized by his client on whose behalf he had procured the judgment upon which execution was levied, to apply said funds of said client to the satisfaction of Rushton's judgment, but petitioner delayed in making this payment until February 2, 1937, almost a month after the local committee had issued its order to show cause against him.

In the circumstances we are of the view that suspension for a period of one year, as recommended by the Board of Governors of The State Bar is not, as petitioner urges, so excessive as to call for a modification.    It is therefore the order of this court that, pursuant to the findings and recommendation of said board of governors, petitioner be and he hereby is suspended from the practice of the law in this state for a period of one year, effective thirty days after the filing of this order.